| | |
|---|---|
| **CURTIS BRUNKHORST,** | ) |
| | ) |
| **Petitioner,** | ) |
| | ) |
| **vs.** | )  **CIVIL NO. 06-991-GPM** |
| | ) |
| **JOSEPH MATHY,** | ) |
| | ) |
| **Respondent.** | ) |

# <u>MEMORANDUM AND ORDER</u>

**MURPHY, District Judge:**

For the reasons that follow, the petition for writ of habeas corpus filed by Petitioner, Curtis

Brunkhorst, is denied.[1]

**FACTUAL BACKGROUND**

On October 4, 1996, Curtis Brunkhorst was charged with three counts of first-degree murder,

concealment of a homicidal death, aggravated battery of a child, endangering the life or health of a

child, and domestic battery. The charges arose from the death of eight-year-old Caleb Jones on

September 12, 1996. The essential facts, as found by the Illinois Appellate Court for the Fifth District

(hereinafter "Appellate Court"),[2] are as follows: In September 1996, Brunkhorst and his three

---

[1] When the petition was filed on December 4, 2006, Eddie Jones was the warden of Pontiac Correctional Center, the institution where Brunkhorst was (and is still) billeted. As of the date of this Memorandum and Order, however, Jones is no longer Pontiac's warden. Joseph Mathy, the Assistant Warden of Operations, is the Acting Chief Administrative Officer, and as such, he is Brunkhorst's custodian at this time. For this reason, the Court substitutes Mathy as the Respondent in this action.

[2] In reviewing a petition for habeas corpus, a federal court presumes the state court's factual findings are correct. 28 U.S.C. § 2254(e)(1). Brunkhorst does not challenge the Appellate

daughters lived with Cynthia Sayles and her three sons. On the morning of September 7, 1996, Brunkhorst took eight-year-old Caleb to the baseball field behind their apartment to run, in order to punish Caleb for spitting out his medicine. When they returned to the apartment, Caleb's lip was bleeding. Brunkhorst told Sayles's oldest son, twelve-year-old Joshua, that Caleb had fallen down. Brunkhorst then took Caleb back to the field to run. When they returned, Caleb had another bloody lip. Brunkhorst told Joshua that he had punched Caleb because he refused to run.

Brunkhorst then began to wrestle with Caleb. He placed Caleb in a painful wrestling hold called a "figure-four-leg lock." Cynthia Sayles testified that Brunkhorst told Caleb, "Don't make me hurt you" and later told her, "If Caleb don't [sic] do what I'm telling him to do, I'm going to kill him."

Joshua testified that during that morning he left the apartment twice to ask neighbors for pain medication for his mother. Upon returning both times, Joshua saw Brunkhorst holding Caleb in the wrestling hold. When Joshua entered the apartment the second time, he heard a crack as he came through the door, and Caleb, still held by Brunkhorst, was holding the back of his head and crying. There was a visible knot on the front of Caleb's head. Cynthia Sayles testified that Caleb then reared up, and his head slammed down on the hard floor.

Brunkhorst took Caleb to his room and told Joshua to hold Caleb in a "sleeper hold," which is designed to cause a loss of consciousness by cutting off oxygen to the brain. Joshua held Caleb as he was told, and Caleb fell to the floor, hitting his head. Joshua applied the sleeper hold again, and Caleb fell to the floor a second time. Brunkhorst returned to the room and asked Joshua what had happened. Joshua replied that the sleeper holds had worked. Brunkhorst placed Caleb on the bed, and Caleb started "shaking." Brunkhorst told Caleb to "cut it out." Thereafter, Caleb fell

Court's factual findings of fact. Thus, this Court relies on those factual findings.

unconscious, and Brunkhorst and Cynthia Sayles took him to the hospital.  Caleb died five days later as a result of severe head injuries.

A short time before these events, on September 6, 1996, Brunkhorst had disciplined Caleb by forcing him to stand on his hands in a corner while Brunkhorst held his feet.  When Caleb could no longer hold the handstand, Brunkhorst would let go of his feet, and Caleb's head would hit the floor.  Brunkhorst made Caleb do the handstand repeatedly throughout the day.  Brunkhorst had threatened to kill Caleb on more than one occasion and had frequently punished him with other harsh punishments including not allowing him to use the toilet, restricting his time to eat a meal, locking him in his bedroom, and forcing him to run for long periods of time. (*See* Docs. 14-6, 14-10, 14-16, Exs. C, G, and M).

## PROCEDURAL BACKGROUND

After presentation of the evidence at trial, Brunkhorst and the prosecution agreed to instruct the jury on three alternative theories of first-degree murder in the same jury instruction: 1) that Brunkhorst acted with the intent to kill or do great bodily harm, 2) that Brunkhorst knew that his acts created a strong probability of death or great bodily harm, or 3) that Brunkhorst caused the death of Caleb Jones while committing a forcible felony (aggravated battery of a child by causing Caleb's head to strike the ground) (Doc. 14-10, Ex. G, p. 2).  The Perry County, Illinois, jury returned a general verdict finding Brunkhorst guilty of first-degree murder along with verdicts of guilty on all other charges.  The trial judge sentenced him to a term of "natural life" imprisonment for first-degree murder and a consecutive five-year sentence for the concealment of a homicidal death (Doc. 14, Ex. C, p. 1).

*Direct Appeal*

Brunkhorst, represented by counsel, raised three issues on direct appeal: 1) that the prosecution violated discovery rules by failing to disclose the substance of oral statements he allegedly made, 2) that the statute under which Brunkhorst was sentenced to natural life imprisonment was unconstitutional, and 3) that the trial court improperly imposed consecutive sentences (Doc. 14, Ex. A, p. 3). In an order dated February 25, 2000, the Appellate Court affirmed the conviction, but vacated the natural-life sentence and remanded the case for resentencing because the statute under which it was imposed had been declared unconstitutional (Doc. 14, Ex. C, p. 7). Brunkhorst did not seek leave to appeal this decision.

Upon remand, the trial judge sentenced Brunkhorst to a term of imprisonment of 90 years for first-degree murder and 5 years for concealment of a homicidal death (Doc. 14, Ex. G, p. 1). Brunkhorst appealed, arguing 1) that he was improperly convicted of first-degree murder in that the jury returned a general verdict of guilty even though one of the counts was felony murder and the underlying felony of aggravated battery of a child did not have an independent felonious purpose, and 2) the sentencing court erred in relying on the victim's age in imposing an extended term sentence because age was a factor inherent in the offense (Doc. 14, Ex. D, pp. 1-2).

On February 11, 2004, the Appellate Court affirmed the conviction in a Rule 23 Order. The Court held that Brunkhorst's first argument was barred because his conviction was affirmed in the first appeal, and Brunkhorst did not seek leave to appeal the affirmed conviction. The Court reasoned that the affirmance in the first direct appeal barred it from reviewing the claim because issues raised in the appeal after remand were limited to issues arising out of the remand proceedings (sentencing issues only). Nevertheless, the Court discussed the merits of Brunkhorst's claim relating to his

conviction and found no error or due process violation. As to the second argument, the Appellate Court found no error in the trial court's reliance on the victim's age in calculating his sentence (Doc. 14, Ex. G). The trial court's judgment was affirmed.

On March 11, 2004, Brunkhorst filed a *pro se* petition for leave to appeal in the Supreme Court of Illinois, raising the same two issues (Doc. 14, Ex. H). The Supreme Court denied leave to appeal on May 26, 2004 (Doc. 14, Ex. I).

**Collateral Review**

On April 6, 2004, Brunkhorst filed a *pro se* petition for post-conviction relief in the trial court. Brunkhorst raised a number of issues in the petition (Doc. 14, Ex. M, p. 2). The trial court denied the post-conviction petition as "frivolous and patently without merit" (Doc. 14, Ex. M, p.1). Brunkhorst, with assistance of counsel, appealed the denial raising one issue: whether the trial court erred in dismissing the post-conviction petition because it presented "the gist of" a constitutional claim that Brunkhorst received ineffective assistance of trial counsel for not calling witnesses whose testimony would have contradicted the testimony of Cynthia Sayles and Joshua Sayles that Brunkhorst was alone with the victim prior to the victim falling unconscious (Doc. 14, Ex. J).

The Appellate Court affirmed the denial of the post-conviction petition as frivolous, finding that the witness testimony at issue would not have altered the outcome of the trial because any inconsistencies that would have contradicted Cynthia Sayles's testimony were merely collateral to the question of Brunkhorst's guilt or innocence (Doc. 14, Ex. M). Brunkhorst then filed a *pro se* petition for leave to appeal in the Supreme Court of Illinois on April 5, 2006, raising claims of ineffective assistance of trial and appellate counsel (Doc. 14, Ex. N). The Illinois Supreme Court denied leave to appeal on May 24, 2006 (Doc. 14, Ex. O).

*Federal Habeas Petition*

On October 13, 2006, Brunkhorst filed the instant petition for writ of habeas corpus under 28

U.S.C. § 2254, raising fourteen grounds for relief:

1.  He was improperly convicted of first-degree murder when the jury returned a general verdict of guilty and one of the counts was felony murder and the underlying felony did not have an independent felonious purpose.

2   The trial court erred in relying on a factor inherent in the offense in imposing an extended term sentence.

3.  Post-conviction appellate counsel was ineffective for not raising the ineffectiveness of trial counsel (for not objecting to the admission of alleged blood and blood-stained items and for stipulating to the testimony of serologist Stacey Speith concerning the blood and blood-stained items).

4.  Post-conviction appellate counsel was ineffective for not raising the ineffectiveness of trial counsel (for not objecting to hypothetical questions concerning the alleged "whipping" action to victim).

5   Post-conviction appellate counsel was ineffective for not raising the ineffectiveness of trial counsel (for not petitioning the trial court for a change of venue).

6.  Post-conviction appellate counsel was ineffective for not raising the ineffectiveness of trial counsel (for not objecting to the prosecution offering evidence that was not supported by the facts).

7.  Post-conviction appellate counsel was ineffective for not raising the ineffectiveness of trial counsel (for not calling certain witnesses to testify at trial).

8.  Post-conviction appellate counsel was ineffective for not raising the ineffectiveness of trial counsel (for not retaining a medical expert).

9.  Post-conviction appellate counsel was ineffective for not raising the ineffectiveness of trial counsel (for not making an opening statement).

10.     The trial court erred in not allowing Brunkhorst to cross-examine an expert witness to impeach him.

11.     The trial court erred in not allowing Brunkhorst to elicit testimony from his co-defendant regarding her plea bargain.

12.     The prosecution violated bribery statutes, 18 U.S.C. § 201 and 720 ILCS 5/33-1.

13.     The prosecution violated Brunkhorst's right not to testify or have to prove his innocence.

14.     The prosecution failed to prove his guilt beyond a reasonable doubt.

(Doc. 1).

In his response, filed on June 19, 2007 (Doc. 14), Respondent argues generally that all of Brunkhorst's claims are either procedurally defaulted or without merit. In reply, Brunkhorst argues that Ground One is not procedurally defaulted and should be granted on the merits, Ground Two should be granted on the merits, and Grounds Three through Fourteen are not procedurally defaulted. (Doc. 20). Brunkhorst urges that Court to find that he is entitled to habeas relief.

### LEGAL STANDARDS

An inmate in state custody may challenge his underlying state conviction in a petition for habeas corpus relief filed pursuant to 28 U.S.C. § 2254. Any claim that has been adjudicated on the merits in a state court proceeding is governed by 28 U.S.C. § 2254(d). *Canaan v. McBride*, 395 F.3d 376, 382 (7th Cir. 2005). This code section provides:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

## PROCEDURAL DEFAULT

Before addressing the merits of the petition, the Court must determine whether any claims have been procedurally defaulted, thereby precluding review by this Court.  When a state court addresses a question of federal law and bases its decision on independent and adequate state law grounds--either substantive or procedural--a federal court generally will not disturb such a finding on habeas review. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991) ("Because this Court has no power to review a state law determination that is sufficient to support the judgment, resolution of any independent federal ground for the decision could not affect the judgment and would therefore be advisory."); *Miranda v. Lawbook*, 394 F.3d 984, 992 (7th Cir. 2005) ("A state ground is deemed independent for this purpose only if the state court actually relied on a state rule sufficient to justify its decision . . . .  The adequacy of the state ground is a question of federal law . . . ; the ground is considered adequate only if the state court applies the rule in a consistent and principled way.") (citations and quotation marks omitted).  This rule recognizes the importance of "finality, comity, and the orderly administration of justice," and the reluctance of the federal courts to rule contrary to the state court on an issue of state law. *Dretke v. Haley*, 541 U.S. 386, 388 (2004); *see also Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) ("The procedural default doctrine and its attendant 'cause and prejudice' standard are 'grounded in concerns of comity and federalism,' . . . and apply alike whether the default in question occurred at trial, on appeal, or on state collateral attack.") (citations omitted).  The object is to allow the state courts the opportunity to address a petitioner's claims in the first instance.  *Edwards*, 529 U.S. at 451.

Procedural default can occur when "a petitioner does not adequately present a claim to the state court," and there is no showing of "cause and prejudice for the default or . . . that a failure to grant him relief would work a fundamental miscarriage of justice." *Richardson v. Briley*, 401 F.3d 794, 801 (7th Cir. 2005) (citation omitted); *Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005) (fundamental miscarriage equals "the conviction of an innocent person"); *see also Edwards*, 529 U.S. at 451-452. A petitioner must "fairly present" his claim to the state court in order to allow the state the opportunity to correct any constitutional violations. *Sanders v. Cotton*, 398 F.3d 572, 581 (7th Cir. 2005) (citations omitted). This fair presentment requirement means that a petitioner must invoke "one complete round of the State's established appellate review process" for each claim. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also Bintz v. Bertrand*, 403 F.3d 859, 863 (7th Cir. 2005). He must present "operative facts and controlling legal principles" for the state court to review. *Cotton*, 398 F.3d at 580. Thus, "[a] habeas petitioner who has exhausted his state court remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted that claim." *Bintz*, 403 F.3d at 863 (quotation marks and citation omitted).

Respondent carries the burden to show that Brunkhorst has procedurally defaulted his claims. Thus, each of the claims for habeas relief will be reviewed in turn.

### Ground 1

Brunkhorst raised Ground 1 in the appeal of his resentencing on remand. The Appellate Court found that any such claim was barred in the appeal after remand because it concerned the conviction, which was affirmed in the first direct appeal (Doc. 14-10, p. 2). Despite this procedural bar, the Appellate Court reviewed the question on the merits and found that there was no due process violation because sufficient evidence supported the verdict. The general verdict of guilty of first-degree murder

rendered harmless any error regarding a finding of first-degree murder on a theory of felony-murder (Doc. 14-10, pp. 3-4). Respondent argues that because the issue was not raised in the first direct appeal, it was procedurally defaulted in state court, and this Court is barred from reviewing it in habeas.

The doctrine that federal habeas review is precluded where a state court judgment rests on an independent and adequate state ground "applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement. In these cases, the state judgment rests on independent and adequate state procedural grounds." *Coleman*, 501 U.S. at 729-30. "[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance." *Id.* at 732.

It is not always clear whether "a state court's reference to state law constitutes an adequate and independent state ground for its judgment." *Harris v. Reed*, 489 U.S. 255, 261 (1989). Thus, the Supreme Court applies a presumption that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Id.* at 263 (citations omitted). This "plain statement" doctrine allows a federal court in habeas to review the state court's constitutional determination unless the state court makes clear that its decision rests firmly on state law grounds. *Id.* The Court in *Coleman*, however, cautioned against reading the *Harris* presumption too broadly. 501 U.S. 722, 735. The Court stated, "[i]n habeas, if the decision of the last state court to which the petitioner presented his federal claims fairly appeared to rest primarily on the resolution of those claims, or to be interwoven with those claims, and did not clearly and expressly

rely on an independent and adequate state ground, a federal court may address the petition."[3] *Id.*

Here, the Appellate Court noted that Brunkhorst's claim was barred on state procedural grounds, but went on to discuss the merits of the claim nevertheless. In so doing, it stated:

> We initially note that when a defendant appeals and the reviewing court remands, the issues which that defendant may raise on his second appeal are limited to those which arose in the remand proceedings. Consequently, in this appeal, defendant is limited to sentencing issues. Defendant's argument pertaining to an improper conviction clearly does not fall within that category. More importantly, defendant's conviction for first-degree murder was affirmed on direct appeal, and defendant did not seek further review of the affirmance of his conviction. That affirmance is now binding on this court, and defendant is barred from challenging his convictions after the remand for sentencing.
>
> In answer to defendant's contentions, nonetheless, felony murder based on aggravated battery is not precluded in every case where the victim of the aggravated battery is also the victim of the murder.
>
> . . .
>
> Convictions for intentional murder and knowing murder clearly were supported by the evidence presented at the trial. Accordingly, defendant suffered no due process violation when the jury found him guilty of intentional murder and knowing murder as well as felony murder.

(Doc. 14-10, pp. 2-4) (citations omitted).

The Appellate Court held specifically that Brunkhorst was barred from raising his first argument on appeal after remand. It also held specifically that Brunkhorst did not suffer a due process violation on the felony-murder issue (Doc. 14-10, p. 4). Although the basis for the decision is somewhat ambiguous, the Appellate Court did not "clearly and expressly rely" on the procedural bar

---

[3] If the last state court to be presented the claim upheld or rejected it summarily, or without explanation as to the basis of its decision, it is presumed to rest upon the same grounds as the last "reasoned state judgment." *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) ("If an earlier opinion 'fairly appear[s] to rest primarily upon federal law,' we will presume that no procedural default has been invoked by a subsequent unexplained order that leaves the judgment or its consequences in place.") (citations omitted).

as the basis for its judgment. The Seventh Circuit has provided guidance on this exact question by holding that where the post-conviction appellate court treated its own direct appeal decision as making a determination of the claim on the merits, a state procedural bar does not serve as "an independent and adequate state ground precluding federal review of that claim." *Moore v. Bryant*, 295 F.3d 771, 777 (7th Cir. 2002).

In rejecting Brunkhorst's appeal of the denial of post-conviction relief, the Appellate Court stated, regarding the appeal after remand, "[w]e found that the convictions for intentional murder and knowing murder clearly were supported by the evidence at the trial, as was the conviction for felony murder" (Doc. 14-16, p. 7). This indicates that the Appellate Court viewed its opinion on direct appeal as making a determination of the claim on the merits. Thus, based on *Moore*, the procedural bar raised in the appellate opinion affirming the resentencing does not constitute "an independent and adequate state ground precluding federal review of that claim." Thus, the merits of Ground 1 will be addressed below.

### Ground 2

Respondent makes no argument that Ground 2 is procedurally defaulted. The disposition of this claim is discussed below.

### Grounds 3 through 9

Brunkhorst raises seven grounds of ineffective assistance of post-conviction appellate counsel. He claims that appellate counsel should have argued that trial counsel was ineffective because he:

- Did not object to the admission of alleged blood and blood-stained items, and he stipulated to the testimony of serologist Stacey Speith concerning the blood and blood-stained items (Ground 3);

- Did not object to the hypothetical questions concerning the alleged "whipping" action to the victim (Ground 4);

- Did not petition the trial court for a change of venue (Ground 5);

- Did not object the prosecution offering evidence that was not supported by the facts (Ground 6);

- Did not call certain witnesses at trial (Ground 7);

- Did not retain a medical expert (Ground 8); and

- Did not make an opening statement (Ground 9).

Brunkhorst has procedurally defaulted grounds 3 through 6 and 8 and 9, because he did not present those claims at each level of state court review. None of these grounds was raised on direct appeal. In his reply, Brunkhorst states that he raised each of these in his petition for post-conviction relief (Doc. 17, pp. 19-21).[4] But his appeal from the denial of post-conviction relief, prepared by counsel, contains only one claim. Brunkhorst states that he requested that his appellate counsel raise each of these grounds on appeal, but she did not. Brunkhorst did raise these grounds for relief in his petition for leave to appeal to the Illinois Supreme Court (Doc. 14, Ex. N2), and he argues that he did all he could to raise these claims in state court.

But because Brunkhorst failed to raise these claims on the appeal of post-conviction relief, each claim is procedurally defaulted. None of the claims received one round of state court review. Even if the Court were to find that Brunkhorst's attempts to raise the claims were sufficient to prevent their procedural default here, the Court could still not reach the merits of these claims. Claims of ineffective assistance of post-conviction counsel are not cognizable in federal habeas review. *See* 28 U.S.C. § 2254(I) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section

---

[4] The record filed by Respondent does not include the petition for post-conviction relief.

2254."). *See also Johnson v. McBride*, 381 F.3d 587, 590-91 (7th Cir. 2004).

Ground 7, in which Brunkhorst argues that his post-conviction appellate counsel was ineffective for failing to raise the ineffectiveness of trial counsel for failing to call certain witnesses, requires additional discussion. Brunkhorst claims that trial counsel should have called four witnesses: Danny Bell, Dr. Sturm, Lawana Hagston, and Steve Hagston (Doc. 1, p. 14). He alleges that trial counsel did not call any witnesses on his behalf nor did he interview any of these individuals to determine what their testimony might have been. Brunkhorst's claim here, though, is that his post-conviction appellate counsel was ineffective for not raising the ineffectiveness of trial counsel. First, as stated above, claims of ineffectiveness of post-conviction appellate counsel are not cognizable in a habeas action. Thus, Ground 7 is barred from further review. Moreover, the failure to call witnesses Lawana and Steve Hagston as witnesses was raised by counsel in the appeal of the denial of the petition for post-conviction relief. In fact, it was the *only* ground raised in that appeal. The facts underlying Ground 7, therefore, indicate that post-conviction appellate counsel could not have been ineffective because this ground *was* raised.

### Grounds 10 through 14

Brunkhorst next raises two claims of trial court error and three claims of prosecutorial misconduct:

- The trial court erred in not allowing him to cross-examine expert witnesses for impeachment purposes (Ground 10).

- The trial court erred in not allowing him to elicit testimony from his co-defendant regarding her plea bargain (Ground 11).

- The prosecution violated bribery statutes, 18 U.S.C. § 201 and 720 ILCS 5/33-1 (Ground 12).

- The prosecution violated Brunkhorst's right not to testify or have to prove his innocence (Ground 13).

- The prosecution failed to prove his guilt beyond a reasonable doubt (Ground 14).

Unfortunately, Brunkhorst did not raise any of these claims in his direct appeal. He states that he raised them in his petition for post-conviction relief, but they were not raised on appeal of the denial of that petition. While they were included in Brunkhorst's *pro se* petition for leave to appeal to the Supreme Court of Illinois, leave to appeal was denied. Thus, Grounds 10 through 14 are procedurally defaulted because they did not receive one complete round of state court review.

## CAUSE AND PREJUDICE FOR PROCEDURAL DEFAULT

The Court must now consider whether Brunkhorst has presented any excuse for the procedural default of the above-noted claims, thereby allowing this Court to consider their merits. "When a petitioner does not adequately present a claim to the state courts, he may obtain federal habeas relief only upon a showing of cause and prejudice for the default or upon a showing that a failure to grant him relief would work a fundamental miscarriage of justice." *Richardson v. Briley*, 401 F.3d 794, 801 (7th Cir. 2005) (quotation marks and citation omitted). In order to establish cause, Brunkhorst must show that "an external impediment" prevented him from presenting his arguments before the state courts. *See Bintz v. Bertrand*, 403 F.3d 859, 864 (7th Cir. 2005). In order to show prejudice, he must present evidence that the errors at trial not only "created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Perruquet v. Briley*, 390 F.3d 505, 515 (7th Cir. 2004) (citation omitted). The burden is on Brunkhorst to demonstrate cause and prejudice to avoid default. *Id.* at 514.

Brunkhorst argues that he raised all of these claims in his petition for post-conviction relief and that he requested that his post-conviction appellate counsel raise them all on appeal of the denial of post-conviction relief, but she did not do so. Brunkhorst then raised each of these claims in his *pro*

*se* petition for leave to appeal to the Illinois Supreme Court. He argues that counsel's failure to raise the claims on appeal of the denial of his petition for post-conviction relief is the cause of the procedural defaults.

Attorney error that rises to the level of ineffective assistance of counsel can be the necessary cause to set aside a procedural default. *Sanders v. Cotton*, 398 F.3d 572, 580 (7th Cir. 2005); *Lee v. Davis*, 328 F.3d 896, 900-901 (7th Cir. 2003). Yet, because Brunkhorst has no right to counsel on appeal of the denial of his petition for post-conviction relief, "any attorney error that led to the default of . . . claims in state court cannot constitute cause to excuse the default in federal habeas." *Coleman v. Thompson*, 501 U.S. 722, 757 (1991). Further, any such error on the part of Brunkhorst's post-conviction appellate counsel cannot constitute cause for the defaults because such an ineffectiveness claim must itself have been raised before the state courts prior to the assertion of such a claim as cause for a separately defaulted claim before this Court. *Edwards v. Carpenter*, 529 U.S. 446, 451-452 (2000). That is, Brunkhorst must demonstrate that he raised the issue of counsel's ineffectiveness in state court before he can use such ineffectiveness to establish cause for the defaulted claim. *Id.* Brunkhorst has made no showing that an ineffectiveness claim regarding counsel's failure to appeal the other issues raised in his post-conviction petition was raised before the state courts.[5] As such, he cannot use any such ineffectiveness as cause for the failure to raise the claims before the state courts. *See Dellinger v. Bowen,* 301 F.3d 758, 766-767 (7th Cir. 2002). All of these claims are procedurally defaulted, and there has been no showing of cause for the default.

Nor has Brunkhorst shown (or even argued) that there has been a fundamental miscarriage of justice, which requires a showing that a constitutional violation occurred which "probably resulted

---

[5] Nor is such a claim raised in the petition filed in this Court.

in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995).  To meet this burden, "the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.*  This requires "a stronger showing than that needed to establish prejudice." *Id.*  Brunkhorst has not, therefore, made a showing to overcome the procedural default of any of the defaulted claims.  Grounds 3 through 14 of the petition are denied.

### GROUNDS NOT COGNIZABLE IN FEDERAL HABEAS REVIEW

Federal habeas relief is available to a state prisoner only on the ground that he is in custody in violation of the Constitution or laws of the United States. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Federal habeas corpus relief does not lie for errors of state law.") (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)).  It is clear that "federal habeas corpus does not reach errors of state law." *Johnson v. Bett*, 349 F.3d 1030, 1037 (7th Cir. 2003).

### Abuse of Discretion in Sentencing

In Ground 2, Brunkhorst argues that the trial court erred in imposing an extended-term sentence because it improperly relied on a factor inherent in the offense.  This claim is not cognizable in a federal habeas action.  Where a state sentence falls within the statutory limit, a federal court will not review the correctness of the sentence in a petition for habeas corpus. *See Gleason v. Welborn*, 42 F.3d 1107, 1112 (7th Cir. 1994); *Bean v. United States*, 679 F.2d 683, 685 (7th Cir. 1982) ("A criminal sentence can be attacked in a habeas corpus proceeding only if the sentencing court lacked jurisdiction to impose it or committed a constitutional error that made the sentence or underlying conviction fundamentally unfair."); *See also Solem v. Helm*, 463 U.S. 277, 290 (1983) ("Reviewing courts, of course, should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes, as well as to the discretion that

trial courts possess in sentencing convicted criminals.").

The claim of error in sentencing, as raised by Brunkhorst here, does not implicate a constitutional error. In his direct appeal, the Appellate Court held that Brunkhorst was found guilty of intentional murder and that the aggravating factor, the victim's age, was properly considered in sentencing. Brunkhorst makes no argument that his term of imprisonment fell outside the statutory limit.[6] Brunkhorst makes no independent claim of constitutional error, except to say the statutory enhancement should not have been imposed. Absent a claim of a constitutional error, making the sentence fundamentally unfair, Brunkhorst's claim is not cognizable in a petition for habeas corpus. *See Gleason*, 42 F.3d at 1112. Ground 2 is denied.

## MERITS REVIEW

That leaves one claim for this Court to review on the merits: that Brunkhorst was improperly convicted of first-degree murder when the jury returned a general verdict of guilty and one of the counts was felony murder, and the underlying felony did not have an independent felonious purpose.

On this question, the Appellate Court stated:

> In answer to defendant's contentions, nonetheless, felony murder based on aggravated battery is not precluded in every case where the victim of the aggravated battery is also the victim of the murder. *See People v. Viser*, 62 Ill. 2d 568, 343 N.E.2d 903 (1975). It is only in those circumstances where there is no clear causal relationship between the crime committed and the resultant murder that felony murder may not be charged. *Cf. People v. Morgan*, 197 Ill. 2d 404, 446, 758 N.E.2d 813, 838 (2001). The question is whether the forcible felony "resulted in and caused" the death of the victim or whether it was the victim's murder that gave rise to the forcible felony. *People v. Ruiz*, 342 Ill. App. 3d 750, 755, 795 N.E.2d 912, 918 (2003). If the murder gave rise to the forcible felony, then the forcible felony cannot serve as a predicate felony for felony murder. *Ruiz*, 342 Ill. App. 3d at 755, 795 N.E.2d at 918. Such is not the case here. The acts constituting the forcible felony of aggravated battery of a child were

---

[6] Indeed the 90-year sentence falls within the statutory limits for first-degree murder which dictates a term of not less than 60 years and not more than 100 years when an extended term is imposed. *See* 730 ILCS 5/5-4.5-20(a).

not inherent in the act of murder itself. *People v. Toney*, 337 Ill. App. 3d 122, 134, 785 N.E.2d 138, 148 (2003). More importantly, the general verdict returned by the jury rendered any error harmless. *See Ruiz*, 342 Ill. App. 3d at 756, 795 N.E.2d at 919. When an indictment contains several counts arising out of a single event and a general verdict is returned, the defendant is guilty as charged on each count to which the proof is applicable. *People v. Cardona*, 158 Ill. 2d 403, 411, 634 N.E.2d 720, 723 (1994); *Ruiz*, 342 Ill. App. 3d at 756, 795 N.E.2d at 919. The evidence in this instance supported the verdicts on all three counts of murder, not just felony murder.

The evidence presented at the trial revealed that on September 6, 1996, defendant, angered by one of Caleb's comments, made Caleb do a handstand in the corner while defendant held Caleb's feet. When Caleb's arms became too tired to support him, defendant let his feet go, causing Caleb to hit his head on the floor. This scenario happened repeatedly over the course of the day, with Caleb being subjected to other punishments in addition. The next day defendant took Caleb to a baseball field to make him run as a punishment for spitting out his medicine. Defendant and Caleb returned some five minutes later with Caleb suffering from a bloody lip. They left again for the baseball field and yet again returned home shortly thereafter with Caleb suffering another bloody lip. Defendant then placed Caleb in a painful four-leg-lock wrestling hold. At one point Caleb's mother heard a cracking sound and saw Caleb still in the wrestling hold, crying and holding the back of his head as though it had been struck on the floor. Caleb reared up and his head slammed down extremely hard on the concrete floor. Defendant eventually took Caleb to Caleb's bedroom and made Caleb's older brother keep Caleb in another wrestling hold designed to cut the blood flow to the brain. Caleb fell to the floor and hit his head. Defendant returned to the bedroom and made the older boy hold Caleb again. Caleb once more fell to the floor. Eventually Caleb was taken to the hospital in an unconscious state with severe head injuries. Caleb died five days later as a result of the injuries to his head. Defendant had threatened to kill Caleb on more than one occasion and had repeatedly mistreated him for some time. The evidence was overwhelming that defendant caused Caleb's fatal injuries. Convictions for intentional murder and knowing murder clearly were supported by the evidence presented at the trial. Accordingly, defendant suffered no due process violation when the jury found him guilty of intentional murder and knowing murder as well as felony murder. *See Morgan*, 197 Ill. 2d at 448, 758 N.E.2d at 838-39.

Finally, defendant agreed to the instruction of the jury on all three theories of first-degree murder in the same instruction and further agreed to the use of a general verdict form. Defendant cannot acquiesce in a proceeding in a given manner and then claim he was prejudiced thereby. *See People v. Villarreal*, 198 Ill. 2d 209, 761 N.E.2d 1175, 1184-85 (2001).

(Doc. 14-10, pp. 3-4).

The Appellate Court made two legal determinations. The Court first held that the acts

constituting aggravated battery of a child were not inherent in the act of murder in Brunkhorst's case so as to legally preclude felony-murder as a basis for the jury's finding that Brunkhorst was guilty of first-degree murder. The Court held, second, that any error in presenting felony-murder as a basis for first-degree murder to the jury was harmless because the jury returned a general verdict. Under Illinois law, when a jury returns a general verdict on an indictment containing multiple counts arising out of the same event, the defendant is presumed guilty on each count that is supported by adequate proof. The Appellate Court described facts that support all three types of first-degree murder presented to the jury. Because the facts established at the trial supported all three theories of first-degree murder, the Court held that no due process violation occurred when the jury returned a general verdict of guilty.

### Standard of Review

This Court's task on habeas review is to determine whether these holdings of the Illinois Court are contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court. *See* 28 U.S.C. § 2254(d). A state court's decision is "contrary to" clearly established Supreme Court precedent when it reaches a legal conclusion that is opposite to a legal conclusion announced by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *Owens v. Frank*, 394 F.3d 490, 496-497 (7th Cir. 2005).

A state court's conclusion is an "unreasonable application" of Supreme Court precedent when the state court identifies the correct legal rule as determined by the Supreme Court, but unreasonably applies it to the facts of the case, unreasonably extends a legal principle from existing precedent, or refuses to extend that principle to a new context where it should apply. *Owens*, 394 F.3d at 496-497 (quoting *Williams*, 529 U.S. at 405). Intervention by a federal court on habeas is limited to

circumstances where a state-court decision is objectively unreasonable. *Woodford v. Visciotti*, 537 U.S. 19, 27 (2002). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 411. The unreasonable application clause of 2254(d)(1) applies here because the ground raised by Brunkhorst involves a "mixed question" of law and fact. *See Tenner v. Gilmore*, 184 F.3d 608, 614 (7th Cir. 1999). A court conducting habeas review must honor "reasonable" decisions of the state courts. *Lindh v. Murphy*, 96 F.3d 856, 870-71 (7th Cir. 1996) (en banc). A state court is not required to cite United States Supreme Court opinions, as long as neither its reasoning nor its resulting decision contradicts clearly established Supreme Court precedent. *See Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam).

### General Verdicts

Having set forth the standard under which the Court is to review the decision of the state court, the Court now turns to the applicable Supreme Court law. At common law, general jury verdicts were valid as long as such a verdict "was legally supportable on one of the submitted grounds–even though that gave no assurance that a valid ground, rather than an invalid one, was actually the basis for the jury's action." *Griffin v. United States*, 502 U.S. 46, 49 (1992). In 1931, the Supreme Court held invalid a conviction obtained by general verdict where one of three possible bases for a finding of guilt was unconstitutional. *Stromberg v. California*, 283 U.S. 359 (1931). In *Yates v. United States*, 354 U.S. 298 (1957), the Court extended the holding of *Stromberg* to find invalid a conviction obtained by general verdict where one possible basis for a finding of guilt was legally invalid (based upon a statutory time bar). Without citing to the Due Process Clause, the Court held, "In these

circumstances we think the proper rule to be applied is that which requires a verdict to be set aside in cases where the verdict is supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected." *Id.* at 312. The Court refused to extend the rule in *Stromberg* to cases where a general verdict is rendered but one of the possible theories of conviction is not adequately supported by sufficient evidence. *See Griffin v. United States*, 502 U.S. 46, 56 (1991). The *Griffin* Court relied on the petitioner's failure to distinguish *Turner v. United States*, 396 U.S. 398, 420 (1970), in which the Court held: "[W]hen a jury returns a guilty verdict on an indictment charging several acts in the conjunctive, as Turner's indictment did, the verdict stands if the evidence is sufficient with respect to any one of the acts charged." *Id.*

Due process protects a criminal defendant from being convicted of an offense "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). There is no due process violation where "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

### *Harmless Error*

"Trial-type" constitutional errors occurring during the presentation of the case to the jury are subject to harmless error analysis. *See Brecht v. Abrahamson*, 507 U.S. 619, 629 (1993). Under the unreasonable application clause of the statute, an error is harmless when "it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Mitchell v. Esparza*, 540 U.S. 12, 17-18 (2003) (per curiam) (quoting *Neder v. United States,* 527 U.S. 1, 19 (1999)) (other citations omitted). In these cases, habeas relief is not available because "the state court simply erred in concluding that the State's errors were harmless," but only when the state court

"applied harmless-error review in an 'objectively unreasonable' manner." *Mitchell*, 540 U.S. at 18

(quoting *Lockyer v Andrade*, 538 U.S. 63, 75-77 (2003)). The Supreme Court recently held that errors

of the type in *Stromberg* and *Yates*–where "a conviction based on a general verdict is subject to

challenge if the jury was instructed on alternative theories of guilt and may have relied on an invalid

one"--are not "structural" errors requiring that the convictions be set aside. *Hedgpeth v. Pulido*, 129

S.Ct. 530 (2008). Instead, such errors are to be reviewed for harmless error and not overturned unless

the flaw in the instructions "had substantial and injurious effect or influence in determining the jury's

verdict." *Id.* at 530-31 (quoting *Brecht*, 507 U.S. at 623). Under *Brecht*, habeas relief is not warranted

unless the alleged trial error resulted in "actual prejudice." 507 U.S. at 621.

*Analysis*

The Appellate Court determined that a felony-murder theory of guilt based upon the

aggravated assault of a child was not precluded by Illinois law on the facts of this case. The Court

found, then, that the general verdict was not improper because the facts adduced at trial supported all

three theories of murder presented to the jury. Under Illinois law, when an indictment contains

several counts arising out of a single event and a general verdict is returned, the defendant is guilty

as charged on each count to which the proof is applicable. *People v. Cardona*, 158 Ill. 2d 403, 411,

634 N.E.2d 720, 723 (1994); *Ruiz*, 342 Ill. App. 3d at 756, 795 N.E.2d at 919. The Appellate Court

alternatively held that any error was harmless because the proof supported convictions on the other

two theories of murder as well.

Brunkhorst argues that a conviction for felony murder based upon aggravated assault of a

child is invalid because the underlying felony did not have an independent felonious purpose under

the rulings of the Illinois courts. He cites *People v. Morgan*, in which the Supreme Court of Illinois

held that "where the acts constituting forcible felonies arise from and are inherent in the act of murder itself, those acts cannot serve as predicate felonies for a charge of felony murder." 758 N.E. 2d 813, 838 (Ill. 2001). Brunkhorst argues that if the jury found him guilty based upon felony murder, his conviction violates due process because it is based upon a "non-existent crime." Therefore, his argument goes, *Stromberg* and *Yates* control, and under those cases, his conviction should be set aside.

This argument is not applicable after *Hedgpeth*, which held that errors of the type in *Stromberg* and *Yates* are subject to harmless error review. A conviction obtained despite a *Stromberg*-type error will not be overturned unless the alleged error "had substantial and injurious effect or influence in determining the jury's verdict." Habeas relief is not available unless the alleged error resulted in actual prejudice. *See Brecht*, 507 U.S. at 621.

Sufficient evidence supported the jury's verdict of first-degree murder. Evidence was presented that Brunkhorst had threatened to kill Caleb on more than one occasion, that he had meted out punishments to Caleb that involved falls on or blows to the head, and that while Brunkhorst held eight-year-old Caleb in a painful wrestling hold, Caleb's head hit the floor with an audible crack. Thus, even if felony murder was not properly presented to the jury because of a conflict with the holding in *Morgan*, the error was harmless because sufficient evidence supported the other two theories of murder. The jury may have found that Brunkhorst intended to kill or do great bodily harm to Caleb by subjecting him to repeated blows to the head, or the jury may have found that Brunkhorst acted with knowledge that repeated blows to the head created a strong probability of death or great bodily harm. Sufficient evidence would support both of these jury determinations. There is no due process violation where "any rational trier of fact could have found the essential elements of the crime

beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. at 319. Moreover, because sufficient evidence supports the other theories of murder, Brunkhorst cannot show actual prejudice as a result of the potential error, nor could that error have had a "substantial and injurious effect or influence" on the jury's verdict.  Ground 1 is denied on its merits.

CONCLUSION

Based on the foregoing, the Court **SUBSTITUTES** Joseph Mathy as the Respondent in this action and **DENIES** the petition for writ of habeas corpus on all grounds.  The Clerk of Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

DATED: 6/12/09

s/ *G. Patrick Murphy*
G. Patrick Murphy
United States District Judge